UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RYAN P. O'BOYLE,

    Petitioner,

v.                                               Case No. 17-C-1746

ROBERT HUMPHREYS,

    Respondent.

## SCREENING ORDER

Ryan O'Boyle was convicted in Milwaukee County Circuit Court of attempted second-degree intentional homicide and was sentenced to 8 years imprisonment. His conviction was affirmed by the Wisconsin Court of Appeals, as were the trial court's orders denying his two separate motions for post conviction relief. He is currently incarcerated at Kettle Moraine Correctional Institution.

On February 4, 2016, O'Boyle filed an petition for federal habeas corpus relief from his state court conviction pursuant to 28 U.S.C. § 2254. *O'Boyle v. Foster*, No. 16-C-126. The petition was dismissed without prejudice on March 17, 2016, for failure to exhaust state court remedies as to all of his claims, and the case was closed. O'Boyle sought to reopen the case and reinstate his petition on December 11, 2017, but his request was denied and he was instructed to file his petition as a new case. He did so on December 13, 2017, and filed an amended petition on January 8, 2018. It is his amended petition that is currently before me.

I must give the case prompt initial consideration pursuant to Rule 4 of the Rules Governing § 2254 Cases, which reads:

> If it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner. If the petition is not dismissed, the judge must order the respondent to file an answer, motion, or other response within a fixed time. . . .

Rule 4, Rules Governing § 2254 Cases. During my initial review of habeas petitions, I look to see whether the petitioner has set forth cognizable constitutional or federal law claims and exhausted available state remedies.

"Habeas corpus petitions must meet heightened pleading requirements. . . ." *McFarland v. Scott*, 512 U.S. 849, 856 (1994) (citing 28 U.S.C. § 2254 Rule 2(c)). The petition must "specify all the grounds for relief available to the moving party," and "state the facts supporting each ground." 28 U.S.C. § 2255, Rule 2(b); *see also Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011) ("The § 2254 Rules and the § 2255 Rules mandate "fact pleading" as opposed to "notice pleading," as authorized under Federal Rule of Civil Procedure 8(a)."). The reason for the heightened pleading requirement in habeas cases, as the Eleventh Circuit noted in *Borden*, is obvious:

> Unlike a plaintiff pleading a case under Rule 8(a), the habeas petitioner ordinarily possesses, or has access to, the evidence necessary to establish the facts supporting his collateral claim; he necessarily became aware of them during the course of the criminal prosecution or sometime afterwards. The evidence supporting a claim brought under the doctrine set forth in *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed.2d 215 (1963), for example, may not be available until the prosecution has run its course. The evidence supporting an ineffective assistance of counsel claim is available following the conviction, if not before. Whatever the claim, though, the petitioner is, or should be, aware of the evidence to support the claim before bringing his petition.

646 F.3d at 810. Were the rule otherwise, federal habeas would be transformed into "a vehicle for a so-called fishing expedition via discovery, an effort to find evidence to support a claim." *Id.* at 810 n. 31.

In addition to the requirement that the petition allege facts that, if true, would entitled one to relief, the standard of review for petitions seeking relief under 28 U.S.C. § 2254 is narrow. A federal court is authorized to grant habeas corpus relief to a state prisoner only upon a showing that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The granting of such relief by federal courts is further limited by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which "significantly constrain any federal court review of a state court conviction." *Searcy v. Jaimeti*, 332 F.3d 1081, 1087 (7th Cir. 2003). Under AEDPA, habeas corpus relief for persons serving sentences imposed by state courts may not be granted on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

O'Boyle asserts numerous grounds upon which he claims he is entitled to relief under § 2254. He claims that his trial counsel was ineffective in (1) failing to request jury instructions regarding eyewitness identification and impeachment; and (2) failing to object to the prosecutors closing argument. He claims that he was denied due process by law enforcement's failure to follow proper procedure in compiling the photo array from which the victim identified him as the person who had stabbed him. Next, O'Boyle claims that his Sixth Amendment right to confront the witnesses against

3

him was violated when the trial court allowed hearsay evidence to be admitted at trial. O'Boyle claims that he was denied due process when the State was allowed to amend the information without leave of the court. He claims that he was provided ineffective appellate counsel when his appellate attorney failed to raise thirteen issues he thinks should have been raised on appeal. Finally, O'Boyle claims that the bailiffs assigned to his trial engaged in jury tampering, the court lacked jurisdiction over him and the judge unreasonably limited his questioning of a witness at a post conviction motion. It is clear from the face of the petition and the attachments thereto, including the thorough decision of the Wisconsin Court of Appeals, that none of O'Boyle's claims has merit. I will address only those claims that merit discussion and have not been procedurally defaulted.

**A. Ineffective Assistance of Trial Counsel**

    **1. Jury Instructions**

O'Boyle first argues the Wisconsin Court of Appeals unreasonably applied and unreasonably determined the facts in finding that his trial attorney was not ineffective in failing to request jury instructions regarding eyewitness identification and impeachment. A person charged with a crime has a Sixth Amendment right to the effective assistance of counsel at trial. To establish ineffective assistance of counsel, a defendant must show (1) counsel's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that counsel's errors affected the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Here, because the Court of Appeals applied the correct legal standard of *Strickland* to this claim, my review of its decision is "doubly deferential." *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011). That is, I must first take "a 'highly deferential' look at counsel's performance," *id.* at 172, in which "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of

4

reasonable professional judgment." *Strickland,* 466 U.S. at 690. Then, I must view the claim through the "deferential lens" of § 2254(d). *Pinholster,* 563 U.S. at 190 (citation omitted). As such, to succeed in a habeas petition on a claim of ineffective assistance of counsel, O'Boyle must show not only that his counsel was deficient, but also that the state court applied *Strickland* in an objectively unreasonable manner. *Bell v. Cone*, 535 U.S. 685, 698–99 (2002).

Even without a deferential standard of review, O'Boyle's claim clearly fails. While the failure to request a special instruction on eyewitness identification could arguably constitute ineffective assistance in a case where false identification was the defense, this was not such a case. O'Boyle was charged with stabbing Ricardo Moran twice after they apparently bumped into each other at a concert at Milwaukee's annual "Summerfest" celebration. O'Boyle's defense was not that he did not stab Moran, but that he did so in self-defense. It makes no sense to instruct the jury on the various factors affecting the reliability of eyewitness identification when the identification of the defendant is not at issue. Given the facts of the case and the theory of defense, counsel was not ineffective in failing to request such an instruction.

The same is true with respect to counsel's failure to request an instruction on impeachment of witnesses. As the Wisconsin Court of Appeals explained, Wisconsin's general impeachment instruction, WISCONSIN JURY INSTRUCTIONS—CRIMINAL 330, is given when evidence has been received regarding a witnesses character or reputation for truthfulness. ECF No. 1-1 at 17. No such evidence was received in the case. The fact that Moran had three prior convictions was introduced, and the trial court properly instructed the jury that such evidence could be considered as bearing on his credibility. And the jury was also presumably provided the general instruction on determining the credibility of witnesses. But absent evidence of reputation or character for truthfulness, there

was no basis on which to request the general impeachment instruction. Counsel was not ineffective in failing to request such an instruction and the state court decision is neither an unreasonable application of federal law nor an unreasonable determination of the facts in light of the evidence presented.

**2. Failure to Object During Closing Arguments**

O'Boyle also argues the Wisconsin Court of Appeals erred when it held that his trial counsel was not ineffective for failing to object to the prosecutor's closing arguments. Specifically, O'Boyle argued his trial counsel should have objected to the following three comments made by the prosecution during closing arguments: 1) that if someone puts a knife into you twice, we would all think "that guy's trying to kill me;" 2) that guys have a tendency to act "macho" and do not want to "step back" or "step down" from confrontations; and 3) that the reason Gutowski, O'Boyle's own friend, did not want to testify is because he knew his testimony was harmful to O'Boyle.

Again, even without the double deference under which a claim of ineffective assistance of counsel is review under § 2254, O'Boyle's argument would fail. The Court of Appeals applied *Strickland* and found Plaintiff's trial counsel was not ineffective. In doing so, it explained that prosecutors are allowed wide latitude during closing arguments and therefore, not only was O'Boyle's counsel not constitutionally deficient by not objecting, but that it would have been frivolous for counsel to do so. This is because, as the court explained, each of the comments O'Boyle claims were improper constituted a fair comment on the evidence in response to the defendant's argument for acquittal. The evidence showed that O'Boyle stabbed Moran twice, once in the chest and once in the abdomen. The prosecutor argued that this fact alone showed intent to murder, an essential element of the charge of attempted first degree intentional homicide. Though

the jury ultimately rejected the prosecutor's argument and found O'Boyle guilty of attempted second degree intentional homicide, there was nothing improper about the prosecutor's argument.

The second statement O'Boyle challenges—that "guys have this—oftentimes this kind of stupid, macho thing going on where we won't step back. We won't step down"—was simply the prosecutor's explanation of why O'Boyle in his drunken state might have reacted to being bumped into as he did. The statement is a generalization that many might challenge, but that does not make it improper.

Finally, the Court of Appeals reasonably concluded that the prosecutor's comments on why Gutkowski was reluctant to testify constituted fair comment on the evidence in response to counsel's argument that O'Boyle shared the same desire to have avoided the confrontation. The prosecutor acknowledged that Gutkowski did not willingly testify, but argued it had nothing to do with the desire to avoid the confrontation on the night of the stabbing. The prosecutor argued that if O'Boyle's version that he was simply defending himself was true, Gutkowski was have been happy to testify and confirm how his friend acted only in self-defense. It was because O'Boyle did not act in self-defense that O'Boyle did not relish the idea of having to testify. This, too, was fair comment on the evidence and reasonable argument. Counsel was not ineffective in failing to object.

**B. Due Process Violation through Photo Array**

O'Boyle next claims that he was denied due process through the improper use of a photo array to identify him. Although, as already noted, identification was not an issue at trial, O'Boyle claims that the improper identification was used to establish probable cause for his arrest. As a result, he argues his warrantless arrest was unlawful because it was the fruit of an identification procedure. Again, the argument makes no sense and the Wisconsin Court of Appeals' rejection of

7

it was not the result of an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence.

I note at the outset that to the extent O'Boyle is challenging his arrest, his claim is really a Fourth Amendment claim. As such, it is not cognizable under § 2254. *See Stone v. Powell*, 428 U.S. 465, 495 (1976) (holding that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial"). Even if O'Boyle could bring such a claim, the only relief such a violation would afford him would be the suppression of evidence obtained as a result of the violation. O'Boyle has not identified any evidence so obtained that was offered at trial. Leaving these hurdles aside, O'Boyle's claim also fails because, as the Court of Appeals explained, he failed to establish that the identification procedure was improperly suggestive.

O'Boyle argues the photo array suffered from several procedural issues and, subsequently, he was denied due process when the photo array was used for identification and probable cause for his arrest. He argues the following procedural errors: 1) the real photo array did not exist at the time of arrest, because the time stamp on the array was three months after when the identification took place; 2) the answer key listed O'Boyle as number five in a "six pack," but that the victim identified him as number three; 3) the report refers to eight potential suspects, but that there were only six; and 4) the victim's signature must have been forged because it looks different than his signature on another document. Each of these alleged procedural errors was explained by Detective Barbara O'Leary, who conducted the identification procedure with Moran several days after he was stabbed.

Detective O'Leary explained at the hearing on O'Boyle's post conviction motion that when a detective is going to show a witness a photo array, a "six pack," which is a sheet containing the image of six individuals is generated by a computer. Separate photos of each of the individuals shown on the six pack are then collected and a different officer places them in individual folders. Two extra folders are used so that the witness does not really know when they are getting to the end and feel pressure to pick someone just to make an identification. The folders are then shuffled by another officer and given back to the detective who instructs the witness to view each photo. Because the detective conducting the procedure does not know which folder contains the suspect's photo, the detective cannot unconsciously influence the witness.

In this case, O'Boyle's photo, which Moran picked out, was in the third folder, which was documented in the report. The numbering for the six pack containing all six photos has no relation to the numbering of the photos. Thus, the fact that O'Boyle's photo may have been number five in the six pack does not mean his photo was placed in folder number five. Detective O'Leary also explained that the copy of the six pack O'Boyle received in discovery had a later date because she regenerated it on the computer rather than retrieve the original from the Property Control Bureau. ECF No. 1-1 at 14–15. Finally, Moran testified at the post conviction hearing that he signed both forms and explained that his signatures may look different because one was intended to be more formal than the other.

Based on this evidence, the trial court found no defects in the procedure that would call into question Moran's identification of O'Boyle as the person who stabbed him. There was certainly no defect, the court concluded, that would render it unusable for establishing probable cause for O'Boyle's arrest. The Court of Appeals reasonably concluded that the trial court's findings were

well supported by the evidence and that O'Boyle's challenge to the photo array had no merit. The court's conclusion is neither an unreasonable application of clearly established federal law nor an unreasonable determination of the facts in light of the evidence presented. O'Boyle's due process claim based on the photo array therefore fails.

**C. Hearsay Before and During Trial**

O'Boyle next claims that inadmissible hearsay evidence was offered into evidence at his trial in violation of his confrontation rights under the Sixth Amendment. His claim is based on the trial court's rulings allowing Detective O'Leary and Milwaukee Police Officer Phillipson to testify to out-of-court statements made to them by Gutowski and two other witnesses during the pretrial suppression hearing, and to an out-of-court statement made by Gutkowski at trial.

The trial court allowed the testimony at the pretrial hearing because it found that the statements were not being offered for the truth of the matter asserted, but rather to establish probable cause for O'Boyle's arrest. The statements thus did not constitute hearsay. *See* Wis. Stat. § 908.01(3) (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). This ruling is clearly correct, but in any event, does not raise Sixth Amendment concerns since an accused's right to confront the witnesses against him is a trial right. *Barber v. Page*, 390 U.S. 719, 725 (1968) ("The right to confrontation is basically a trial right."). "At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." *United States v. Raddatz*, 447 U.S. 667, 679 (1980) (citing *United States v. Matlock*, 415 U.S. 164, 172–174 (1974)).

At trial, Officer Phillipson, who also happened to be Gutowski's roommate, was permitted to testify to what Gutowski told him about the incident. The trial court ruled Phillipson's testimony about Gutowski's previous statement was admissible as a prior inconsistent statement since Gutkowski had given inconsistent testimony at trial. The Court of Appeals agreed and found no error. O'Boyle raises the issue anew in his petition for federal habeas relief now clothed in Sixth Amendment attire.

O'Boyle never claimed in the state court proceedings that the trial court's ruling violated his Sixth Amendment confrontation rights. "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This means that the petitioner must "give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . ." *Id.* at 845; *see also Duncan v. Henry*, 513 U.S. 364, 366 (1995) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."). By failing to alert the Wisconsin courts of his confrontation clause claim, O'Boyle failed to provide those courts such an opportunity. It thus appears that he procedurally defaulted this claim.

Even if he did not, the result is the same. The admission of Officer Phillipson's testimony did not result in the violation of O'Boyle's Sixth Amendment right. O'Boyle had the opportunity to confront Gutowski during trial concerning the statement since Gutkowski in fact testified. Therefore, O'Boyle's right to confront these witnesses was not violated. This claim also fails.

11

**D. Denied Due Process When Charge Was Amended**

O'Boyle's next ground for relief is that he was denied due process because the State amended his charge without leave of the trial court several months after his original charge. O'Boyle alleges that although he was originally charged with recklessly endangering safety on July 15, 2011, the State amended the information on February 27, 2012, adding the homicide count. O'Boyle attempts to characterize this as a violation of his due process rights to a fair trial; however, his entire argument is based on the failure to the prosecutor to expressly seek leave from the trial court to amend as required under Wisconsin Statute § 971.29, which requires leave of the court to amend the charge after the arraignment. The Court of Appeals easily rejected O'Boyle's argument noting that the trial court implicitly granted leave to amend and, in any event, O'Boyle's attorney never objected. Even now, O'Boyle fails to allege any prejudice from the amendment which was made well before trial.

Here, again, because O'Boyle did not identify a constitutional violation in his argument in state court, his due process claim was not fairly presented and is unexhausted. *See Chambers v. McCaughtry*, 264 F.3d 732, 739 (7th Cir. 2001). Even if he had exhausted the claim, he would not be entitled to federal relief. The state court's ruling was clearly correct under state law and, absent some claim of prejudice, no due process violation could be found.

**E. Ineffective Assistance of Appellate Counsel and Other Claims**

Finally, O'Boyle argues his appellate counsel provided ineffective assistance in failing to raise some thirteen issues that he believes should have been raised on his appeal. O'Boyle asserted this claim in a *Knight* petition filed directly with the Wisconsin Court of Appeals. *See State v. Knight*, 168 Wis. 2d 509, 484 N.W. 2d 540 (1992). The Court denied the petition ex parte without ordering

12

a response. ECF No. 7-1 at 32. The Court found O'Boyle's allegations of error conclusory and too undeveloped to merit extended discussion. To a large extent, the issues he claims appellate counsel should have raised were the same or similar to the issues already discussed. For example, he claimed his arrest was unlawful and based on hearsay, his bind over was based on an incompetent witness, the State inflated the charge by amending to attempted first degree intentional homicide, that he was not bound over on that charge, that the trial court erred in denying his suppression motion, the victim committed perjury, and general other and assorted complaints about his trial and conviction. To the extent not already addressed, none of the issues merits further treatment. O'Boyle has failed to alleged any facts sufficient to show an error of constitutional import or from which he suffered any prejudice. As the Court of Appeals explained, a court "is not a performing bear, required to dance to each and every tune played on an appeal." *Id.* at 36 (quoting *State v. Waste Mgmt. of Wis., Inc.*, 81 Wis. 2d 555, 564, 261 N.W. 2d 147 (1978).

In sum, it is clear from the petition and the attachments that O'Boyle is not entitled to relief under § 2254. His petition is therefore **DENIED** and the case is **DISMISSED**. The Clerk is **DIRECTED** to enter judgment accordingly.

Having disposed of this petition, the Court must decide whether to issue a certificate of appealability. Rule 11(a), Rules Governing § 2254 Petitions. The certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted) (citing

*Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). If the court issues a certificate of appealability it must indicate on which specific issue or issues the petitioner has satisfied the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3).

Here I conclude that reasonable jurists could not debate the outcome, and the petitioner has not shown the denial of any constitutional right. The certificate of appealability is therefore **DENIED**.

**SO ORDERED** at Green Bay, Wisconsin this   11th   day of May, 2018.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge